# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| KEVIN BRYAN ST. JOHN, | § | |
| | § | |
| JOHN CHARLES YOUNG II, SSGT, USAF | § | |
| (RET), | § | |
| | § | |
| ESTATE OF JAMES ELLIOTT KEGAN, | § | |
| TSGT, USAF (RET), | § | |
| RALPH MICHAEL KEGAN, | § | |
| JAMES PAUL KEGAN, | § | |
| CAROLYN LOUISE CLINE, | § | |
| KATHERINE ANN HUNT, | § | |
| | § | |
| TODD SCOTT RAFAIANI, | § | |
| FRANCES KAY RAFAIANI, | § | |
| LAWRENCE EUGENE RAFAIANI, | § | |
| LESLIE MARIE CORE, | § | |
| | § | |
| NORMAN EDWARD BROWN, | § | |
| | § | |
| NATHANIEL WAYNE HILL, | § | **COMPLAINT** |
| WAYNE EARL HILL, | § | |
| BRANDON MICHAEL HILL, | § | |
| HEATHER MARIE MILLER, | § | **Civil Action No. 23-cv-2333** |
| | § | |
| VINCENT BRUCE JOBSON, | § | |
| VIRGINIA HOUDE JOBSON, | § | |
| KRYSTOFER MYKAEL HOUDE | § | |
| SCHOFIELD, | § | |
| | § | |
| LEONARD DIXON, JR., SMSGT, USAF | § | |
| (RET), | § | |
| | § | |
| BOBBY GENE CASTLEMAN, JR., | § | |
| SMSGT, USAF (RET), | § | |
| | § | |
| CHRISTOPHER DALE SAMPLE, | § | |
| KATHRINE ELIZABETH SAMPLE, | § | |
| | § | |
| JASON ALEXANDER UMBERGER, | § | |
| CHRISTOPHER MALCOLM UMBERGER, | § | |
| | § | |
| MICHAEL ROY MANIBUSAN, | § | |
| JENNIFER CARREON MANIBUSAN, | § | |

1

| | |
|---|---|
| ERICA MARIE BELCHER,<br>YOLANDA MAZZARA,<br>MICHAEL JOSEPH MAZZARA,<br>SUSAN ANGELA JONES,<br><br>THE ESTATE OF JOHN THOMAS<br>BELCHER,<br><br>PATRICK WILLIAM O'CONNOR, JR,<br>RYAN CHARLES O'CONNOR,<br><br>SHAWN BERDELL KIRKPATRICK,<br><br>MICHAEL BRENT WILLIS,<br>SHELLY RAE WILLIS,<br><br>TERRY FITZGERALD HAYWOOD,<br>SSGT, USAF (RET),<br>DONALD ARDRAIN ANDERSON,<br>TRINA DENISE ANDERSON,<br><br>MARIO JAIME VALENCIA,<br><br>TRAVIS KEITH BUTIKOFER, SMSGT,<br>USAF (RET),<br>SYLVIA MARIE WILSON,<br>KEITH REY BUTIKOFER,<br>DENICE MARIE MORGAN,<br>BRYAN KEITH BUTIKOFER,<br>TYLER REY BUTIKOFER,<br>REBECCA LYN JENSEN,<br>MEGAN MARIE STERLING,<br>TYREL ZACHARY JENSEN,<br><br>JAMES DAN SIKES, TSGT, USAF (RET),<br>MONICA SANCHEZ LOPEZ,<br>MICAH DREW SIKES,<br>RONALD DUANE SIKES,<br>LOWELL JEFFREY SIKES,<br>JERRY LYNN SIKES,<br><br>RICHARD KEVIN FESENBEK, MSGT,<br>USAF (RET),<br><br>TERRENCE DAVID DAMMER, MSGT,<br>USAF (RET), | § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § |

| | | |
|---|---|---|
| ANNA LOUISE DAMMER, | § | |
| CHRISTOPHER MICHAEL DAMMER, | § | |
| GIRAY DIANE BERGER, | § | |
| | § | |
| THE ESTATE OF CRAIG THOMAS | § | |
| BROWN, MSGT, USAF (RET), | § | |
| LYNNETTE ANN BROWN, | § | |
| COURTNEY TATE PLEVA, | § | |
| LINDSAY ANN BROWN, | § | |
| | § | |
| TIMOTHY SHANE SEELEY, | § | |
| | § | |
| JERRON KEITH SWEAZY, MSGT, USAF | § | |
| (RET), | § | |
| JANICE CAROLL RICE SWEAZY, | § | |
| WARREN EUGENE SWEAZY, | § | |
| BRENDA JEAN SWEAZY, | § | |
| MICHAEL WADE SWEAZY, | § | |
| | § | |
| JAMES VERONAL BUCKMON, III, | § | |
| MSGT, USAF (RET), | § | |
| PATRICIA DENISE BUCKMON, | § | |
| COREY DWAYNE DUNLAP, | § | |
| JASMIN NICHOLE LOGAN, | § | |
| SHANICE SYMONE BUCKMON, | § | |
| SHAKIYLA CHANTE BUCKMON, | § | |
| | § | |
| EDWARD EARL WHITLEY, CMSGT, | § | |
| USAF (RET), | § | |
| MARY CLARISE WHITLEY, | § | |
| CHRISTINA NICOLE WHITLEY, | § | |
| JANNA MARIE-LOUISE KENTROLIS, | § | |
| | § | |
| STEVEN RAY MATTESON, | § | |
| | § | |
| NICOLE MARIE VAN NAME, | § | |
| | § | |
| RAY ANTONIO WAGSTAFF, | § | |
| | § | |
| TIMOTHY MICHAEL RAYMOND, | § | |
| | § | |
| CECIL BEN DILLS, | § | |
| JEANNIE MARIE MEEK, | § | |
| | § | |
| CURTIS LEE VAN METER, | § | |
| ERIN DAVID HOWARD, | § | |

| | |
|---|---|
| JESSICA NICOLE SWIFT, | § |
| JORDAN MARLENE VANMETER, | § |
| PIERCE NATHANIEL VAN METER, and | § |
| | § |
| NANCY PATRICIA DIMARCO. | § |
| | § |
| (Addresses to be filed under seal with | § |
| permission) | § |
| | § |
| Plaintiffs, | § |
| | § |
| v. | § |
| | § |
| | § |
| THE ISLAMIC REPUBLIC OF IRAN | § |
| The Ministry of Foreign Affairs | § |
| Imam Khomeini Street | § |
| Imam Khomeini Square | § |
| Tehran, Iran | § |
| 1136914811 | § |
| | § |
| THE ISLAMIC REVOLUTIONARY | § |
| GUARD CORPS ("IRGC") | § |
| Armed Forces Headquarters Iran | § |
| Tehran – Zone 7 – Shariati | § |
| Ghoddoosi Square (Ghaar) | § |
| Tehran, Iran | § |
| | § |
| IRANIAN MINISTRY OF INTELLIGENCE | § |
| & SECURITY | § |
| (a/k/a Vezarat-e Ettela'at Va Amniat-e | § |
| Keshvar a/k/a VEVAK a/k/a VAJA) | § |
| Second Negarestan Street | § |
| Pasdaran Avenue | § |
| Tehran, Iran | § |
| | § |
| Defendants. | § |
| | § |

## **COMPLAINT**

Plaintiffs bring this action under the terrorism exception to the Foreign Sovereign Immunities Act, 28 U.S.C. § 1605A ("FSIA") against Defendants the Islamic Republic of Iran, the Iranian Islamic Revolutionary Guards Corps ("IRGC"), and the Iranian Ministry of Intelligence and Security ("MOIS") for damages arising out of the June 25, 1996, terrorist attack on the Khobar Towers complex in Dhahran, Saudi Arabia ("Attack"). On that day, Hezbollah terrorists, acting at the direction and with the material support of Defendants Iran and its agents the IRGC and MOIS, detonated a 5,000-pound truck bomb outside the complex, which housed United States military personnel.[1] The blast from this bomb sheared off the entire face of the Khobar Towers complex and shattered windows more than half a mile away. The blast killed 19 Air Force servicemembers and injured many others. This Court has previously recognized liability for the Attack by these Defendants and co-conspirators.[2]

Plaintiffs are thirty-three (33) injured servicemembers and sixty (60) of their immediate family members. They seek compensatory and punitive damages under the Foreign Sovereign Immunities Act, 28 U.S.C. §1605A(c), and under other applicable state and federal law, against Defendants the Islamic Republic of Iran, the Iranian Ministry of Intelligence and Security, and the Islamic Revolutionary Guard Corps, jointly and severally, and in support of their Complaint allege as follows:

---

[1] The pronunciation and spelling of "Hezbollah" ("Hezbollah"; "Hizballah"; "Hizbu'llah"), is based on region and dialect, but all translate to the "Party of Allah."
[2] *Blais v Islamic Republic of Iran*, 459 F. Supp. 2d 49 (D.D.C. 2006); *Estate of Heiser v Islamic Republic of Iran*, 466 F. Supp. 2d 229 Id.D.C.2006); *Rimkus v Islamic Republic of Iran*, 575 F. Supp. 2d 181, (D.D.C. 2008).

## I. JURISDICTION and VENUE

1.      This Court has jurisdiction over this matter and over the Defendants pursuant to 28

U.S.C. §§ 1330(a), 1330(b), 1331, 1332(a), and 1605A, which create subject-matter and personal

jurisdiction for civil actions for personal injury against State Sponsors of Terrorism and their

officials, employees, and agents.

2.      The Foreign Sovereign Immunities Act, 28 U.S.C. § 1605A(c), provides a federal

private right of action against a foreign state that is or was a State Sponsor of Terrorism, and also

against any official, employee, or agent of that foreign state while acting within the scope of his

or her office, employment or agency, for wrongful death, personal injury, and related torts.

3.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(f).

## II. THE PARTIES

### A. Plaintiffs

4.      **Plaintiff Col. Kevin Bryan St. John** is a United States citizen and is domiciled in

the State of Virginia. On June 25, 1996, Mr. St. John, age 28, was serving as a 1st Lieutenant Flight

Commander for the 363rd Expeditionary Wing of the United States Air Force, stationed in

Dhahran, Saudi Arabia, and housed at the Khobar Towers complex.  At the time of the Attack, Mr.

St. John was looking out his window in Building 126. Suddenly, he saw a flash of light and felt

the immense shock wave from the blast. In an instant, Mr. St. John was thrown across the room,

flipped in the air, and slammed down onto the ground. Pieces of shredded window screen lacerated

his face and head. Despite the chaos of furniture and debris strewn across his room, he managed

to locate a towel to wrap around his face and head to control the profuse bleeding from his wounds.

Mr. St. John acted quickly to ensure that his suitemates were evacuated from the building. Once

outside, he and his squadron proceeded to the chow hall to set up makeshift triage stations.

Although he sustained deep wounds that required medical attention, Mr. St. John declined treatment to allow the medics to tend to others with life-threatening injuries. In the days following the Attack, Mr. St. John oversaw accountability, triage, and complex security. He also assisted in the investigation and recovery efforts and in the process, he encountered horrific remnants of the attack that still have a lasting impact to this day. He was awarded an Air Force Achievement Medal with Valor for his actions following the Attack. Mr. St. John suffered significant and permanent physical and psychological injuries from the Attack, and as a result, he has past and future noneconomic damages, including severe mental pain and suffering and loss of enjoyment of life.

5.     **Plaintiff John Charles Young, II, SSgt, USAF (Ret),** is a United States citizen and is domiciled in the State of South Carolina. On June 25, 1996, Mr. Young, age 24, was serving as a Senior Airman for the 4th Component Repair Squadron of the United States Air Force, stationed in Dhahran, Saudi Arabia, and housed at the Khobar Towers complex. At the time of the Attack, Mr. Young was lying in his bed on the seventh floor of Building 129. Without warning, a powerful blast wave launched Mr. Young out of his bed and across the room and then sent him crashing down onto the ground. Despite the high-pitched ringing in his ears, Mr. Young could hear people yelling in distress. He quickly exited the room in his bare feet through mounds of debris and broken glass. Once outside the building, he hurried over to triage where he picked out the shards of glass embedded in his feet and assessed the deep laceration to his shin. Notwithstanding his own painful injuries, Mr. Young provided buddy aid to others in the overwhelmed triage center. Later, he also assisted in accountability efforts and clean-up. He was awarded a Certificate of Appreciation for his actions following the Attack. Mr. Young suffered significant and permanent physical and psychological injuries from the Attack, and as a

result, he has past and future noneconomic damages, including severe mental pain and suffering and loss of enjoyment of life.

6.     **Plaintiff Estate of James Elliott Kegan, TSgt, USAF (Ret),** was, at the time of his death, a United States citizen and was domiciled in the State of Florida. On June 25, 1996, Mr. Kegan, age 39, was serving as a Technical Sergeant for the 33rd Fighter Wing, 58th Tactical Fighter Squadron, of the United States Air Force, stationed in Dhahran, Saudi Arabia, and housed at the Khobar Towers complex. At the time of the Attack, Mr. Kegan was in the lavatory on the fifth floor of Building 127.  Mr. Kegan was propelled across the room by the force of the blast wave, and his head hit against a concrete wall, and then he was dropped into a bathtub. Glass and metal shrapnel shredded his body. His aorta was torn, and his genitalia was sliced almost all the way through. To repair the tear in Mr. Kegan's aorta, he required a kidney dissection.  Due to the various other injuries that he sustained in the Attack and the stents and skin grafts he endured as a result thereof, Mr. Kegan was physically incapable of successfully undergoing a kidney transplant and was put on dialysis for the remainder of his life. For the next several years, as a result of the Attack, Mr. Kegan's physical and psychological health continued to deteriorate until his death in 2022. He was awarded a Purple Heart for his injuries following the Attack. Mr. Kegan suffered significant and permanent physical and psychological injuries from the Attack, and as a result, the Estate of James Elliott Kegan has past and future noneconomic damages, including severe mental pain and suffering and loss of enjoyment of life.

7.     **Plaintiff Ralph Michael Kegan** is a United States citizen and is domiciled in the State of Florida. He is the child of James Elliott Kegan. He brings this action individually and as the personal representative of the Estate of James Elliott Kegan.

8.      **Plaintiff James Paul Kegan** is a United States citizen and is domiciled in the State of Florida. He is the child of James Elliott Kegan.

9.      **Plaintiff Carolyn Louise Cline** is a United States citizen and is domiciled in the State of Ohio. She is the child of James Elliott Kegan.

10.     **Plaintiff Katherine Ann Hunt** is a United States citizen and is domiciled in the State of Ohio. She is the child of James Elliott Kegan.

11.     As a result of the June 25, 1996, attack and James Elliott Kegan's injuries, family members, Ralph Michael Kegan, James Paul Kegan, Carolyn Louise Cline, and Katherine Ann Hunt, suffered severe mental anguish, extreme emotional pain and suffering, loss of solatium, and loss of services. The injuries suffered by James Elliott Kegan, and the subsequent loss of his life, continue to have a lasting effect on his family members.

12.     **Plaintiff Todd Scott Rafaiani** is a United States citizen and is domiciled in the State of Ohio. On June 25, 1996, Mr. Rafaiani, age 21, was serving as an Airman First Class and Special Purpose Vehicle Mechanic for the 43rd Transport Squadron of the United States Air Force, stationed in Dhahran, Saudi Arabia, and housed at the Khobar Towers complex. At the time of the Attack, Mr. Rafaiani was laying in his bed on the fourth floor of Building 124. Suddenly, he heard a deafening thunder and the electricity flickered.   A window exploded and a door was blown off its hinges. Mr. Rafaiani was blown out of his bed and immediately, his ears started ringing. In his urgency to escape the building, Mr. Rafaiani failed to put on shoes, which resulted in numerous lacerations on his feet from the shattered glass and debris that covered the floor. Once outside his building, Mr. Rafaiani witnessed mass panic. Everyone around him was running, and the wounded were being carried to triage. Mr. Rafaiani refused to seek medical attention for his injuries and

instead assisted in setting up additional triage sites in the barracks. When he was able, Mr. Rafaiani self-treated his injuries, including using super glue to close the deep lacerations on his feet. After the Attack, Mr. Rafaiani was assigned to repair the vehicles damaged by the explosion. Bomb threats continued for the next two months, causing Mr. Rafaiani unrelenting and exhausting anxiety. Mr. Rafaiani suffered significant and permanent physical and psychological injuries from the Attack, and as a result, he has past and future noneconomic damages, including severe mental pain and suffering and loss of enjoyment of life.

13.    **Plaintiff Frances Kay Rafaiani** is a United States citizen and is domiciled in the State of Ohio. She is the parent of Todd Scott Rafaiani.

14.    **Plaintiff Lawrence Eugene Rafaiani** is a United States citizen and is domiciled in the State of Ohio. He is the parent of Todd Scott Rafaiani.

15.    **Plaintiff Leslie Marie Core** is a United States citizen and is domiciled in the State of Ohio. She is the sibling of Todd Scott Rafaiani.

16.    As a result of the June 25, 1996, attack and Todd Scott Rafaiani's injuries, family members, Frances Kay Rafaiani, Lawrence Eugene Rafaiani, and Leslie Marie Core, suffered severe mental anguish, extreme emotional pain and suffering, loss of solatium, and loss of services. The injuries suffered by Todd Scott Rafaiani continue to have a lasting effect on his family members and have taken a significant toll on their relationships.

17.    **Plaintiff Norman Edward Brown** is a United States citizen and is domiciled in the State of Pennsylvania. On June 25, 1996, Mr. Brown, age 22, was serving as an Airman in the United States Air Force, stationed in Dhahran, Saudi Arabia, and housed at the Khobar Towers complex. At the time of the Attack, Mr. Brown had just taken a seat on the work transportation

bus near Building 131. Suddenly, Mr. Brown saw a bright flash and he felt the pressure of a powerful blast wave. He was forcefully thrown around the bus and knocked unconscious. When Mr. Brown awoke, he found himself lying outside of the bus.  His vision was distorted, his hearing was muffled, and he was bleeding from lacerations all over his body. Mr. Brown followed the masses of people running towards Building 131 to help with evacuation and provide buddy-aid. He was overwhelmed by images of devastation, including bloody footprints on the ground, bloody handprints on the walls, and severely injured people all around him.  For days after the Attack, Mr. Brown was tasked with cleaning the destruction left behind by the bomb. He was awarded an Armed Forces Expeditionary Medal and an Air Force Outstanding Unit Award for his actions following the Attack.  Mr. Brown suffered significant and permanent physical and psychological injuries from the Attack., and as a result, has past and future noneconomic damages, including severe mental pain and suffering and loss of enjoyment of life.

18.     **Scott Patrick Hill** is a United States citizen and is domiciled in the State of Oregon. On June 25, 1996, Mr. Hill, age 23, was serving in the United States Air Force, stationed in Dhahran, Saudi Arabia, and housed at the Khobar Towers complex. At the time of the Attack, Mr. Hill was sleeping in his room in Building 128. Mr. Hill was injured in the Attack and was awarded an Air Force Achievement Medal First Oak Leaf Cluster, Armed Forces Expeditionary Medal, and the Southwest Asia Service Medal for his actions following the Attack. Mr. Hill suffered significant and permanent physical and psychological injuries from the Attack, and as a result, he has past and future noneconomic damages, including severe mental pain and suffering and loss of enjoyment of life. On July 12, 2021, a complaint was filed on his behalf in the United States District Court for the District of Columbia, Case No. 1:21-CV-01859, for claims arising from the injuries Mr. Hill sustained in the Attack. On February 1, 2023, documentary evidence in support

of Mr. Hill's claims was submitted to the court. This case is currently pending and awaiting judgment.

19.     **Plaintiff Nathaniel Wayne Hill** is a United States citizen and is domiciled in the State of Oregon. He is the child of Scott Patrick Hill.

20.     **Plaintiff Wayne Earl Hill** is a United States citizen and is domiciled in the State of Oregon. He is the parent of Scott Patrick Hill.

21.     **Plaintiff Brandon Michael Hill** is a United States citizen and is domiciled in the State of Washington. He is the sibling of Scott Patrick Hill.

22.     **Plaintiff Heather Marie Miller** is a United States citizen and is domiciled in the State of Oregon. She is the sibling of Scott Patrick Hill.

23.     As a result of the June 25, 1996, attack and Scott Patrick Hill's injuries, family members, Nathaniel Wayne Hill, Wayne Earl Hill, Brandon Michael Hill, and Heather Marie Miller, suffered severe mental anguish, extreme emotional pain and suffering, loss of solatium, and loss of services. The injuries suffered by Scott Patrick Hill continue to have a lasting effect on his family members and have taken a significant toll on their relationships.

24.     **Plaintiff Vincent Bruce Jobson** is a United States citizen and is domiciled in the State of New Hampshire. On June 25, 1996, Mr. Jobson, age 21, was serving as an Airman First Class in the United States Air Force, stationed in Dhahran, Saudi Arabia, and housed at the Khobar Towers complex. At the time of the Attack, Mr. Jobson was standing outside, near Building 131. Suddenly, he saw an extremely bright flash of light, followed by a gray mushroom cloud over Building 131. His ears were pierced by the sound of an explosion. Within seconds, the force of a blast wave and flying debris struck him. Mr. Jobson was hurled into the air and slammed to the

ground 12 feet from where he was standing before the blast. A sharp and painful sensation radiated through his back and a large piece of shrapnel impaled his shoulder. Despite the overwhelming urge to rush towards Building 131 to rescue his fellow Airmen, Mr. Jobson followed the crowd to the chow hall. Mr. Jobson was severely disoriented, physically unstable, and bleeding. Colleagues helped him make his way to triage, and eventually sat him on a curb and treated his injuries. Due to the shock, fear, and pandemonium of the Attack and its aftermath, Mr. Jobson was unable to sleep for several days. He became despondent when he learned the names of the deceased and watched their bodies get prepared for transport home. Mr. Jobson was awarded a Purple Heart for his injuries following the Attack. Mr. Jobson suffered significant and permanent physical and psychological injuries from the Attack, and as a result, he has past and future noneconomic damages, including severe mental pain and suffering and loss of enjoyment of life.

25.    **Plaintiff Virginia Houde Jobson** is a United States citizen and is domiciled in the State of New Hampshire. She is the spouse of Vincent Bruce Jobson.

26.    **Plaintiff Krystofer Mykael Houde Schofield** is a United States citizen and is domiciled in the State of New Hampshire. He is the child of Vincent Bruce Jobson.

27.    As a result of the June 25, 1996, attack and Vincent Bruce Jobson's injuries, family members, Virginia Houde Jobson and Krystofer Mykael Houde Schofield, suffered severe mental anguish, extreme emotional pain and suffering, loss of solatium, and loss of services. The injuries suffered by Vincent Bruce Jobson continue to have a lasting effect on his family members and have taken a significant toll on their relationships.

28.    **Plaintiff Leonard Dixon, Jr., SMSgt, USAF (Ret)** is a United States citizen and is domiciled in the State of Texas. On June 25, 1996, Mr. Dixon, age 22, was serving as a Security

Controller for the 4404th Security Police Squadron of the United States Air Force, stationed in Dhahran, Saudi Arabia, and housed at the Khobar Towers complex. At the time of the Attack, Mr. Dixon was working in Building 120 when he received a call reporting that a suspicious truck with two unknown occupants was parked outside of Building 131. In anticipation of danger, Mr. Dixon immediately initiated evacuation procedures. Within moments, a sudden explosion knocked Mr. Dixon to the ground and blew out all the windows and doors around him. Mr. Dixon quickly gathered his senses and dispatched security and response procedures. Throughout the night and for the next few days, Mr. Dixon worked security control and prepared for additional potential attacks, leaving him endlessly hypervigilant as the complex was now vulnerable. Upon return to his dorm in Building 130, Mr. Dixon witnessed the extensive damage caused by the Attack and realized how fortunate he was not to have been in his room at the time of the Attack. Mr. Dixon constantly replays his actions on the night of the Attack, and tortuously questions if he did enough in response to the initial warning call. He experiences severe guilt over the significant loss of life and countless injuries sustained by his fellow servicemembers. He was awarded an Air Force Commendation Medal with Valor, an Expeditionary Medal, Armed Forces Expeditionary Medal, and a Certificate of Appreciation for his actions following the Attack. Mr. Dixon suffered significant and permanent physical and psychological injuries from the Attack, and as a result, he has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life.

29.     **Plaintiff Bobby Gene Castleman, Jr. SMSgt, USAF (Ret),** is a United States citizen and is domiciled in the State of Texas. On June 25, 1996, Mr. Castleman, age 38, was serving as a Technical Sergeant for the 28th Bomb Wing, S.D. Civil Engineering Squadron, of the United States Air Force, stationed in Dhahran, Saudi Arabia, and housed at the Khobar Towers

complex. At the time of the Attack, Mr. Castleman was in his dorm in Building 133. Suddenly, the air shifted, and he was thrown into a metal wall locker and slammed to the floor, rendering him unconscious. He was awakened by a search group that carried him out of the building to receive medical attention. The entire left side of Mr. Castleman's body was severely injured, and he sustained significant injuries to his lower back and left hip which caused debilitating pain. Mr. Castleman was assessed and treated for his injuries and was released with crutches and pain medication. He was awarded a Purple Heart for his injuries from the Attack. Mr. Castleman suffered significant and permanent physical and psychological injuries from the Attack, and as a result, he has past and future noneconomic damages, including severe mental pain and suffering and loss of enjoyment of life.

30.     **Plaintiff Christopher Dale Sample** is a United States citizen and is domiciled in the State of Texas. On June 25, 1996, Mr. Sample, age 26, was serving as a Senior Airman in the 4404th Expeditionary Force of the United States Air Force, stationed in Dhahran, Saudi Arabia, and housed at the Khobar Towers complex. At the time of the Attack, Mr. Sample was in the lobby of Building 127. Suddenly, he heard a blast, and the glass doors exploded, sending shards of glass at Mr. Sample, piercing and scraping his body. Mr. Sample could not avoid inhaling the smoke and sand that filled the air. Mr. Sample ran outside to a sea of people with horrifying injuries pouring out of the surrounding buildings. He instinctively ran back into Building 127 and grabbed bed sheets to wrap injured personnel and move them to safety. Mr. Sample spent the rest of the night searching for survivors in Building 131. During his search, he encountered the bodies of all 19 fallen servicemembers, images he will never forget. He was awarded an Armed Forces Expeditionary Medal and a Certificate of Appreciation for his actions following the Attack. Mr. Sample suffered significant and permanent physical and psychological injuries from the Attack,

and as a result, Mr. Sample has past and future noneconomic damages, including severe mental pain and suffering and loss of enjoyment of life.

31.     **Plaintiff Kathrine Elizabeth Sample** is a United States citizen and is domiciled in the State of Texas. She is the spouse of Christopher Dale Sample.

32.     As a result of the June 25, 1996, attack and Christopher Dale Sample's injuries, family member, Katherine Elizabeth Sample, suffered severe mental anguish, extreme emotional pain and suffering, loss of solatium, and loss of services. The injuries suffered by Christopher Dale Sample continue to have a lasting effect on his family member and have taken a significant toll on their relationship.

33.     **Plaintiff Jason Alexander Umberger** is a United States citizen and is domiciled in the State of West Virginia. On June 25, 1996, Mr. Umberger, age 22, was serving as a Senior Airman for the 4404th Wing (Provisional) of the United States Air Force, stationed in Dhahran, Saudi Arabia, and housed at the Khobar Towers complex. At the time of the Attack, Mr. Umberger was on duty, walking through the complex toward Building 131, when he received a call of a suspicious truck on the perimeter of the compound. Within seconds, Mr. Umberger was thrown backward to the ground by the force of the bomb and was left severely disoriented. When he gathered his senses, he saw a large gash in his arm and felt extreme pain. An unfamiliar, odd odor permeated the air, and the complex filled with smoke and debris, making it difficult to see.  When the dust settled, he could see broken glass everywhere, and servicemembers stumbling through the complex with blood coating their bodies. Mr. Umberger helped the injured get to triage and provided buddy care when he could. He treated his own injuries by debriding and bandaging his wounded arm. Mr. Umberger spent the days following the Attack guarding the bomb site, anxiously on the lookout for another attack. He was awarded an Armed Forces Expeditionary

Medal for his actions following the Attack. Mr. Umberger suffered significant and permanent physical and psychological injuries from the Attack, and as a result, he has past and future noneconomic damages, including severe mental pain and suffering and loss of enjoyment of life.

34.     **Plaintiff Christopher Malcolm Umberger** is a United States citizen and is domiciled in the State of West Virginia. He is the sibling of Jason Alexander Umberger.

35.     As a result of the June 25, 1996, attack and Jason Alexander Umberger's injuries, family member, Christopher Malcolm Umberger, suffered severe mental anguish, extreme emotional pain and suffering, loss of solatium, and loss of services. The injuries suffered by Jason Alexander Umberger continue to have a lasting effect on his family member and have taken a significant toll on their relationship.

36.     **Plaintiff Michael Roy Manibusan** is a United States citizen and is domiciled in the State of California. On June 25, 1996, Mr. Manibusan, age 21, was serving as an Airman First Class in the United States Air Force, stationed in Dhahran, Saudi Arabia, and housed at the Khobar Towers complex.  At the time of the Attack, Mr. Manibusan was on duty as a patrolman, standing outside his vehicle in the complex. When the bomb detonated, Mr. Manibusan was knocked to the ground by the force of the blast wave. When he gathered his senses, he was surrounded by chaos and commotion. He ran towards the bombed building, where he searched for trapped personnel, escorted those who were immobile to safety, and carried the severely injured to triage. Mr. Manibusan spent the next several days working security at the complex. For 20 hours a day, he vigilantly stood guard, ready for another attack. He was awarded the Armed Forces Expeditionary Medal and a Superior Performance Certificate for his actions following the Attack. Mr. Manibusan suffered significant and permanent physical and psychological injuries from the Attack, and as a

result, he has past and future noneconomic damages, including severe mental pain and suffering and loss of enjoyment of life.

37.     **Plaintiff Jennifer Carreon Manibusan** is a United States citizen and is domiciled in the State of California. She is the spouse of Michael Roy Manibusan.

38.     As a result of the June 25, 1996, attack and Michael Roy Manibusan's injuries, family member Jennifer Carreon Manibusan suffered severe mental anguish, extreme emotional pain and suffering, loss of solatium, and loss of services. The injuries suffered by Michael Roy Manibusan continue to have a lasting effect on his family member and have taken a significant toll on their relationship.

39.     **Plaintiff Erica Marie Belcher** is a United States citizen and is domiciled in the State of Washington. On June 25, 1996, Ms. Belcher, age 21, was serving as an Airman First Class and an Aircrew Life Support Technician, for the 61st Airlift Wing of the United States Air Force, stationed in Dhahran, Saudi Arabia, and housed at the Khobar Towers complex. At the time of the Attack, Ms. Belcher was in her room in Building 103. Suddenly, a powerful wave of air overtook her body, and she was knocked off balance. The windows and glass doors shattered around her, and the electricity went out. When Ms. Belcher's eyes adjusted to the darkness, she saw that a doorknob had been blown off the door and was impaled into the dresser, narrowly missing her. Through the chaos, Ms. Belcher heard her suitemate screaming for help, so she ran to her aid and the two frantically rushed out of the building. Once outside, she located first-aid supplies and transported them to the triage center. Throughout the night and into the next morning, Ms. Belcher tirelessly collected medical equipment and necessary supplies and distributed them across the complex where needed. Ms. Belcher spent the remainder of her time at the complex cleaning up the destruction left by the bomb. She was awarded an Air Force Achievement Medal Third Oak

Leaf Cluster and an Armed Forces Expeditionary Medal for her actions following the Attack. Ms. Belcher suffered significant and permanent physical and psychological injuries from the Attack, and as a result, she has past and future noneconomic damages, including severe mental pain and suffering and loss of enjoyment of life.

40.     **Plaintiff Yolanda Mazzara** is a United States citizen and is domiciled in the State of Texas. She is the parent of Erica Marie Belcher.

41.     **Plaintiff Michael Joseph Mazzara** is a United States citizen and is domiciled in the State of Texas. He is the sibling of Erica Marie Belcher.

42.     **Plaintiff Susan Angela Jones** is a United States citizen and is domiciled in the State of Texas. She is the sibling of Erica Marie Belcher.

43.     As a result of the June 25, 1996, Attack and Erica Marie Belcher's injuries, family members, Yolanda Mazzara, Michael Joseph Mazzara, and Susan Angela Jones, suffered severe mental anguish, extreme emotional pain and suffering, loss of solatium, and loss of services. The injuries suffered by Erica Marie Belcher continue to have a lasting effect on her family members and have taken a significant toll on their relationships.

44.     **Plaintiff Estate of John Thomas Belcher,** by and through his personal representative Erica Marie Belcher, was, at the time of his death, a United States citizen and was domiciled in the State of Washington. On June 25, 1996, Mr. Belcher, age 23, was serving as a Senior Airman for the 4410th Airlift Squadron, 4404th Wing (Provision), Operations Group, of the United States Air Force, stationed in Dhahran, Saudi Arabia, and housed at the Khobar Towers complex. At the time of the Attack, Mr. Belcher was sleeping in his room in Building 103. Suddenly, the windows shattered, and shards of glass and debris blew into the room. Mr. Belcher

was struck and lacerated on his head by flying debris. The thunderous boom of the bomb caused ringing in his ears. After escaping his building, Mr. Belcher helped transfer the bodies of the deceased, aided the injured at triage, and tended to his own injuries. In the days following the Attack, Mr. Belcher worked at the bomb site, scouring for pieces of evidence, cleaning shrapnel and glass, and establishing accommodations for the replacement fighter squadron. During this time, he witnessed gruesome images including bloody imprints and remnants of blast victims. Mr. Belcher remained on high alert and experienced extreme emotional distress that he was not able to overcome. Unfortunately, Mr. Belcher succumbed to his injuries from the Attack and died by suicide on August 15, 2018. The Attack was the direct and proximate cause and/or a substantial contributing factor to his mental anguish and extreme emotional pain and suffering that resulted in his suicide. Mr. Belcher was awarded an Armed Forces Expeditionary Medal for his actions following the Attack. Mr. Belcher suffered significant and permanent physical and psychological injuries from the Attack, and as a result, the Estate of John Thomas Belcher has past and future noneconomic damages, including severe mental pain and suffering and loss of enjoyment of life.

45. **Plaintiff Patrick William O'Connor, Jr.** is a United States citizen and is domiciled in the State of Arizona. On June 25, 1996, Mr. O'Connor, Jr., age 27, was serving as a Sergeant for the 4404th Wing (Provisional), Security Police Squadron of the United States Air Force, stationed in Dhahran, Saudi Arabia, and housed at the Khobar Towers complex. At the time of the Attack, Mr. O'Connor was sitting on a couch, watching a movie, on the eighth floor of Building 119. Suddenly, the electricity flickered, and he heard a rumble barreling toward him that shook the building. The next thing he knew he was on the ground behind the couch. Mr. O'Connor was dazed but could hear frantic movement in the hallway, and he joined the exodus of people evacuating the building. Along the way, he saw doors blown off their hinges and thick smoke

billowing out from Building 131. Outside, he was tasked with managing the overwhelming radio traffic, directing Security Police to the most needed locations, and arming himself for potential combat engagement amid additional bomb threats. The next morning, Mr. O'Connor was devastated to see the shocking destruction left behind, and he experienced emotional distress for the remainder of his time at the complex. Mr. O'Connor was awarded an Air Force Commendation Medal with Valor Device for his actions following the Attack. Mr. O'Connor suffered significant and permanent physical and psychological injuries from the Attack, and as a result, he has past and future noneconomic damages, including severe mental pain and suffering and loss of enjoyment of life.

46.     **Plaintiff Ryan Charles O'Connor** is a United States citizen and is domiciled in the State of Arizona. He is the sibling of Patrick William O'Connor.

47.     As a result of the June 25, 1996, attack and Patrick William O'Connor's injuries, family member, Ryan Charles O'Connor, suffered severe mental anguish, extreme emotional pain and suffering, loss of solatium, and loss of services. The injuries suffered by Patrick William O'Connor continue to have a lasting effect on his family member and have taken a significant toll on their relationship.

48.     **Plaintiff Shawn Berdell Kirkpatrick** is a United States citizen and is domiciled in the State of Florida. On June 25, 1996, Mr. Kirkpatrick, age 21, was serving as an Airman First Class and Civil Engineer for the 4404th Wing (Provisional), Electrical Systems Apprentice, of the United States Air Force, stationed in Dhahran, Saudi Arabia, and housed at the Khobar Towers complex. At the time of the Attack, Mr. Kirkpatrick had just laid down on his bed on the fifth floor of Building 133. Suddenly, a blast detonated, and debris flew about his room. He felt heat from the explosion and the powerful force of the blast wave. When he gathered his senses, he jumped

out of his bed to escape. He was barefoot and sustained countless lacerations on his feet due to the shards of glass that carpeted the floor. In the hallway, he saw total chaos, and he encountered a friend with a horrific leg injury. Mr. Kirkpatrick picked him up and carried him out of the building to triage. Mr. Kirkpatrick returned to his building to conduct more search and rescue. He found another friend with a severe gash on his face, who he also escorted to triage. Mr. Kirkpatrick remained at triage for the next several hours, self-treating the lacerations to his feet. In the days following the Attack, Mr. Kirkpatrick went back to the destroyed buildings and assisted in repairs, ensured access to all functioning buildings, and conducted damage assessment. He was awarded a Purple Heart, an Air Force Commendation Medal with Valor, and an Armed Forces Expeditionary Medal for his injuries and actions following the Attack. Mr. Kirkpatrick suffered significant and permanent physical and psychological injuries from the Attack, and as a result, he has past and future noneconomic damages, including severe mental pain and suffering and loss of enjoyment of life.

49.    **Plaintiff Michael Brent Willis** is a United States citizen and is domiciled in the State of Florida. On June 25, 1996, Mr. Willis, age 29, was serving as a Staff Sergeant for the 4415th Intelligence Squadron of the United States Air Force, stationed in Dhahran, Saudi Arabia, and housed at the Khobar Towers complex. At the time of the Attack, Mr. Willis was in Building 129, reading in his bed. Suddenly, his door slammed shut, then flew off its hinges, ripping the doorframe from the wall. The windows shattered and shards of glass launched throughout the room. Mr. Willis heard yelling and rushed out of his room. He encountered an airman who was heavily bleeding, so he located a first aid kit to provide buddy care.  He then proceeded to help other severely injured personnel out of the building to triage. During this process, his feet were shredded by the broken glass that covered the floors. He was awarded an Air Force Achievement

Medal Fourth Oak Leaf Cluster with Valor Device for his actions following the Attack. Mr. Willis suffered significant and permanent physical and psychological injuries from the Attack, and as a result, he has past and future noneconomic damages, including severe mental pain and suffering and loss of enjoyment of life.

50.   **Plaintiff Shelly Rae Willis** is a United States citizen and is domiciled in the State of Florida. She is the spouse of Michael Brent Willis.

51.   As a result of the June 25, 1996, attack and Michael Brent Willis' injuries, family member, Shelly Rae Willis, suffered severe mental anguish, extreme emotional pain and suffering, loss of solatium, and loss of services. The injuries suffered by Michael Brent Willis continue to have a lasting effect on his family member and have taken a significant toll on their relationship.

52.   **Plaintiff Terry Fitzgerald Haywood, SSgt, USAF (Ret)** is a United States citizen and is domiciled in the State of Florida. On June 25, 1996, Mr. Haywood, age 24, was serving as a Senior Airman, Munitions Systems Specialist, for the 4404th Maintenance Group of the United States Air Force, stationed in Dhahran, Saudi Arabia, and housed at the Khobar Towers complex. At the time of the Attack, Mr. Haywood was in his room in Building 128. Suddenly, he heard a loud blast, and a vacuum-like sensation overtook his body. The building shook. Within seconds, he was blown into the air and slammed against a concrete wall hitting his head, and then he was dropped to the floor. Mr. Haywood was disoriented; his glasses were destroyed, and his hearing was muffled. Severe pain radiated throughout his body. Mr. Haywood made his way out of the building and once outside, he saw the destruction caused by the bomb. The complex looked like a war zone. Trucks, cars, and dumpsters were flipped over. Glass and debris were everywhere, and people were running around, bleeding and crying. Despite his own injuries, Mr. Haywood helped with rescue efforts and administered lifesaving first aid to countless people for the next several

hours, which included making tourniquets out of his own clothing and carrying the severely injured to ambulances for immediate treatment. Mr. Haywood spent the next several days cleaning the damage left by the Attack. He was awarded an Air Force Achievement Medal for his actions following the Attack. Mr. Haywood suffered significant and permanent physical and psychological injuries from the Attack, and as a result, he has past and future noneconomic damages, including severe mental pain and suffering and loss of enjoyment of life.

53.     **Plaintiff Donald Ardrain Anderson** is a United States citizen and is domiciled in the State of Arkansas. He is the sibling of Terry Fitzgerald Haywood.

54.     **Plaintiff Trina Denise Anderson** is a United States citizen and is domiciled in the State of Tennessee. She is the sibling of Terry Fitzgerald Haywood.

55.     As a result of the June 25, 1996, attack and Terry Fitzgerald Haywood's injuries, family members, Donald Ardrain Anderson and Trina Denise Anderson, suffered severe mental anguish, extreme emotional pain and suffering, loss of solatium, and loss of services. The injuries suffered by Terry Fitzgerald Haywood continue to have a lasting effect on his family members and have taken a significant toll on their relationships.

56.     **Plaintiff Mario Jaime Valencia** is a United States citizen and is domiciled in the State of Arizona. On June 25, 1996, Mr. Valencia, age 22, was serving as a Senior Airman for the 4404th Security Police Forces of the United States Air Force, stationed in Dhahran, Saudi Arabia, and housed at the Khobar Towers complex. At the time of the Attack, Mr. Valencia was standing guard near Building 125. Suddenly, he heard a loud crack, like lightning, and saw a flash of white. He then felt a blast wave ripple through his body. A mushroom cloud appeared directly in front of him, and dust began to rain down on him. Immediately, Mr. Valencia initiated security protocol. He prepared to deny entry to anyone, which he soon learned was impossible. Without any backup

besides his sole partner, Mr. Valencia was rushed by locals. A crowd of people swarmed the gate, causing pandemonium and leaving Mr. Valencia in fear for his life. Once that hysteria calmed, Mr. Valencia assisted with the evacuation of personnel from the destroyed buildings, and then he stood guard outside Building 131 until the next afternoon. While there, he witnessed the gruesome devastation of the Attack, including blood stains and detached body parts of his fellow airmen. Mr. Valencia was awarded an Air Force Achievement Medal and an Exceptional Performer Award for his actions following the Attack. Valencia suffered significant and permanent physical and psychological injuries from the Attack and as a result, he has past and future noneconomic damages, including severe mental pain and suffering and loss of enjoyment of life.

57. **Plaintiff Travis Keith Butikofer, SMSgt, USAF (Ret)** is a United States citizen and is domiciled in the State of Washington. On June 25, 1996, Mr. Butikofer, age 22, was serving as a Senior Airman for the 37th Munitions Flight Squadron of the United States Air Force, stationed in Dhahran, Saudi Arabia, and housed at the Khobar Towers complex. At the time of the Attack, Mr. Butikofer was sitting on his couch with a friend in his room in Building 104. Suddenly, there was a flash of bright light, and the room seemed to explode. Mr. Butikofer and his friend were thrown across the room, hitting each other in the process. Mr. Butikofer then slammed into the concrete wall and was immediately knocked unconscious. Glass shards pelted the left side of his body. When he came to, he tried to stand up, but he felt excruciating pain all over his body. Despite his own injuries, Mr. Butikofer provided buddy aid to one of his suitemates who sustained a severe head injury. Mr. Butikofer made his way out of the building but struggled to walk due to a laceration on his right knee, and another deep laceration on his left thigh that created pain with every step that he took. Once outside, Mr. Butikofer was taken by ambulance to a hospital for treatment, where his wounds were debrided and stitched, and countless pieces of glass were

removed from his body. He was awarded a Purple Heart for his injuries from the Attack. Mr. Butikofer suffered significant and permanent physical and psychological injuries from the Attack, and as a result, he has past and future noneconomic damages, including severe mental pain and suffering and loss of enjoyment of life.

58.     **Plaintiff Sylvia Marie Wilson** is a United States citizen and is domiciled in the State of Idaho. She is the parent of Travis Keith Butikofer.

59.     **Plaintiff Keith Rey Butikofer** is a United States citizen and is domiciled in the State of Idaho. He is the parent of Travis Keith Butikofer.

60.     **Plaintiff Denice Marie Morgan** is a United States citizen and is domiciled in the State of Idaho. She is the sibling of Travis Keith Butikofer.

61.     **Plaintiff Bryan Keith Butikofer** is a United States citizen and is domiciled in the State of Idaho. He is the sibling of Travis Keith Butikofer.

62.     **Plaintiff Tyler Rey Butikofer** is a United States citizen and is domiciled in the State of Idaho. He is the sibling of Travis Keith Butikofer.

63.     **Plaintiff Rebecca Lyn Jensen** is a United States citizen and is domiciled in the State of Idaho. She is the sibling of Travis Keith Butikofer.

64.     **Plaintiff Megan Marie Sterling** is a United States citizen and is domiciled in the State of Illinois. She is the sibling of Travis Keith Butikofer.

65.     **Plaintiff Tyrel Zachary Jensen** is a United States citizen and is domiciled in the State of Idaho. He is the sibling of Travis Keith Butikofer.

66.     As a result of the June 25, 1996, attack and Travis Keith Butikofer's injuries, family members, Sylvia Marie Wilson, Keith Rey Butikofer, Denice Marie Morgan, Bryan Keith Butikofer, Tyler Rey Butikofer, Rebecca Lyn Jensen, Megan Marie Sterling, and Tyrel Zachary Jensen, suffered severe mental anguish, extreme emotional pain and suffering, loss of solatium, and loss of services. The injuries suffered by Travis Keith Butikofer continue to have a lasting effect on his family members and have taken a significant toll on their relationships.

67.     **Plaintiff James Dan Sikes, TSgt, USAF (Ret),** is a United States citizen and is domiciled in the State of Kentucky. On June 25, 1996, Mr. Sikes, age 27, was serving as a Senior Airman and Munitions System Specialists for the 49th Fighter Wing of the United States Air Force, stationed in Dhahran, Saudi Arabia, and housed at the Khobar Towers complex. At the time of the Attack, Mr. Sikes was sitting on a chair watching a movie with friends in Building 104. Suddenly, there was a flash of light and the windows in his room exploded, sending shards of glass everywhere. Mr. Sikes was launched from his seat and dropped to the floor. He was dazed but began to panic when he realized that the blood on the floor beneath him was coming from his head. His friend provided buddy aid to the head injury and helped Mr. Sikes evacuate the building. Mr. Sikes was transported to a hospital where he received numerous stitches and extensive treatment for the injuries he sustained. He was awarded a Purple Heart for his injuries from the Attack. Mr. Sikes suffered significant and permanent physical and psychological injuries from the Attack, and as a result, he has past and future noneconomic damages, including severe mental pain and suffering and loss of enjoyment of life.

68.     **Plaintiff Monica Sanchez Lopez** is a United States citizen and is domiciled in the State of California. She is the former spouse of James Dan Sikes.

69.     **Plaintiff Micah Drew Sikes** is a United States citizen and is domiciled in the State of Georgia. He is the child of James Dan Sikes.

70.     **Plaintiff Ronald Duane Sikes** is a United States citizen and is domiciled in the State of Kentucky. He is the parent of James Dan Sikes.

71.     **Plaintiff Lowell Jeffrey Sikes** is a United States citizen and is domiciled in the State of Texas. He is the sibling of James Dan Sikes.

72.     **Plaintiff Jerry Lynn Sikes** is a United States citizen and is domiciled in the State of Texas. He is the sibling of James Dan Sikes.

73.     As a result of the June 25, 1996, attack and James Dan Sikes' injuries, family members, Monica Sanchez Lopez, Micah Drew Sikes, Ronald Duane Sikes, Lowell Jeffrey Sikes, and Jerry Lynn Sikes, suffered severe mental anguish, extreme emotional pain and suffering, loss of solatium, and loss of services. The injuries suffered by James Dan Sikes continue to have a lasting effect on his family members and have taken a significant toll on their relationships.

74.     **Plaintiff Richard Kevin Fesenbek, MSgt, USAF (Ret)** is a United States citizen and is domiciled in the State of Florida. On June 25, 1996, Mr. Fesenbek, age 30, was serving as a Staff Sergeant and Integrated Aircraft Avionics Systems Specialist for the 58th Fighter Squadron of the United States Air Force, stationed in Dhahran, Saudi Arabia, and housed at the Khobar Towers complex. At the time of the Attack, Mr. Fesenbek was in his room in Building 131. He was standing near his bed, looking across the room when witnessed the concrete floor suddenly ripple like a wave, his wall locker splintered into pieces, and then the lights went out. Mr. Fesenbek blacked out and awakened to people yelling all around him. His ears were ringing, his body throbbed with pain, and he was disoriented, but he knew that he needed to evacuate the building

immediately. In doing so, he tripped over debris and broken glass that shredded his feet. Mr. Fesenbek helped others escape the building and continued to assist injured and trapped personnel throughout the night. For days, following the attack he suffered with pain and bleeding from the wounds he sustained the night of the bombing. Fesenbek helped load the caskets of his fallen comrades onto planes for their return home. Mr. Fesenbek was awarded a Purple Heart for his injuries from the Attack. Mr. Fesenbek suffered significant and permanent physical and psychological injuries from the Attack, and as a result, he has past and future noneconomic damages, including severe mental pain and suffering and loss of enjoyment of life.

75. **Plaintiff Terrence David Dammer, MSgt, USAF (Ret)** is a United States citizen and is domiciled in the State of Utah. On June 25, 1996, Mr. Dammer, age 38, was serving as a Technical Sergeant for the 4404th Wing (Provisional) of the United States Air Force, stationed in Dhahran, Saudi Arabia, and housed at the Khobar Towers complex. At the time of the Attack, Mr. Dammer was taking a shower in his suite in Building 104. Suddenly, he heard a loud boom, and the shower wall caved in, hitting his right shoulder. Mr. Dammer was blown out of the shower stall, striking the sink and the toilet as he was thrown to the ground. Pain radiated throughout his body, and he was severely dazed. After finding clothing, he made his way out of the building and into the chaos outdoors where he witnessed countless bloodied people running, screaming, and crying.  He rushed to the bomb site to help with evacuation efforts, but he was directed away for safety reasons. Mr. Dammer continues to feel guilty for not going into that building to rescue a dear friend. Mr. Dammer spent the next four days working nonstop, as he assisted with first aid and rescue efforts, moving patients, supplying munitions, searching for evidence in the investigation, organizing accountability, and recovering body parts of his fellow Airmen. For his efforts following the Attack, Mr. Dammer was awarded an Air Force Commendation Medal, Air

Force Expeditionary Medal, and Air Force Achievement Medal with Second Oak Leaf Cluster. Mr. Dammer suffered significant and permanent physical and psychological injuries from the Attack, and as a result, he has past and future noneconomic damages, including severe mental pain and suffering and loss of enjoyment of life.

76.     **Plaintiff Anna Louise Dammer** is a United States citizen and is domiciled in the State of Utah. She is the spouse of Terrence David Dammer.

77.     **Plaintiff Christopher Michael Dammer** is a United States citizen and is domiciled in the State of Utah. He is the child of Terrence David Dammer.

78.     **Plaintiff Giray Diane Berger** is a United States citizen and is domiciled in the State of Illinois. She is the sibling of Terrence David Dammer.

79.     As a result of the June 25, 1996, attack and Terrence David Dammer's injuries, family members, Anna Louise Dammer, Christopher Michael Dammer, and Giray Diane Berger, suffered severe mental anguish, extreme emotional pain and suffering, loss of solatium, and loss of services. The injuries suffered by Terrence David Dammer continue to have a lasting effect on his family members and have taken a significant toll on their relationships.

80.     **Plaintiff Estate of Craig Thomas Brown, MSgt, USAF (Ret),** was, at the time of his death, a United States citizen and was domiciled in the State of Texas. On June 25, 1996, Mr. Brown, age 29, was serving as a Technical Sergeant for the 388th Fighter Wing, 34th Fighter Squadron of the United States Air Force, stationed in Dhahran, Saudi Arabia, and housed at the Khobar Towers complex. At the time of the Attack, Mr. Brown was in his dorm room near Building 131. Suddenly, there was a loud blast. The windows exploded into the room, and a curtain rod was blown off the wall, striking Mr. Brown on his head. He frantically wrapped his head with clothing

to try to control the bleeding. Shards of glass lacerated his hands, knees, and feet, causing them to bleed profusely. Initially, Mr. Brown tended to his own injuries, but later received stitches for a head wound that he sustained. Despite these injuries, Mr. Brown assisted in clean-up efforts and provided aid to injured personnel. He was awarded a Purple Heart for his injuries from the Attack. Mr. Brown succumbed to his injuries from the Attack and died by suicide on December 12, 2016. The Attack was the direct and proximate cause and/or a substantial contributing factor to his mental anguish and extreme emotional pain and suffering that resulted in his suicide. Mr. Brown suffered significant and permanent physical and psychological injuries from the Attack, and as a result, the Estate of Craig Brown, MSgt, USAF (Ret) has past and future noneconomic damages, including severe mental pain and suffering and loss of enjoyment of life.

81.     **Plaintiff Lynnette Ann Brown** is a United States citizen and is domiciled in the State of Kansas. She is the spouse of Craig Thomas Brown. She brings this action individually and as the personal representative of the Estate of Craig Thomas Brown.

82.     **Plaintiff Courtney Tate Pleva** is a United States citizen and is domiciled in the State of Georgia. She is the child of Craig Thomas Brown.

83.     **Plaintiff Lindsay Ann Brown** is a United States citizen and is domiciled in the State of Texas. She is the child of Craig Thomas Brown.

84.     As a result of the June 25, 1996, attack and Craig Thomas Brown's injuries, family members, Lynnette Ann Brown, Courtney Tate Pleva, and Lindsay Ann Brown, suffered severe mental anguish, extreme emotional pain and suffering, loss of solatium, and loss of services. The injuries suffered by Craig Thomas Brown, and the subsequent loss of his life, continue to have a lasting effect on his family members.

85.     **Plaintiff Timothy Shane Seeley** is a United States citizen and is domiciled in the

State of Texas. On June 25, 1996, Mr. Seeley, age 19, was serving as an Airman First Class for

the 4404th Security Police Squadron, of the United States Air Force, stationed in Dhahran, Saudi

Arabia, and housed at the Khobar Towers complex. At the time of the Attack, Mr. Seeley was

visiting a friend in Building 119. Suddenly, the lights flickered, the building shook, and he heard

a thunderous explosion. Mr. Seeley was overcome with the force of a blast wave and his ears began

to ring. Mr. Seeley rushed to escape and saw a balcony caved in and dust and debris everywhere.

He hurried down two flights of stairs to exit the building, but the exterior door would not open,

and the crowded stairwell erupted in panic. After a struggle, they finally got the door open. Mr.

Seeley ran outside where he witnessed gruesomely injured people, prompting him to provide

necessary first aid and buddy care. When he heard that potential attackers were jumping the

perimeter fence, he ran to the armory. In his frantic effort to load his weapon, Mr. Seeley injured

his finger on an ammunition can. Later, when Mr. Seeley finally got back to his room in Building

129, he saw the massive destruction to his room and realized that if he had been there at the time

of the Attack, he would have been gravely injured. In the days after the Attack, Mr. Seeley was

tasked with security detail, as well as clearing rubble and retrieving the belongings of deceased

service members. He was awarded an Air Force Achievement Medal with Valor, a Certificate of

Appreciation, and an Armed Forces Expeditionary Medal for his actions following the Attack. Mr.

Seeley suffered significant and permanent physical and psychological injuries from the Attack,

and as a result, he has past and future noneconomic damages, including severe mental pain and

suffering and loss of enjoyment of life.

86.     **Plaintiff Jerron Keith Sweazy, MSgt, USAF (Ret)** is a United States citizen and

is domiciled in the State of Florida. On June 25, 1996, Mr. Sweazy, age 22, was serving as an

Airman First Class and Aerospace Group Equipment Apprentice for the 4404th Maintenance Squadron, of the United States Air Force, stationed in Dhahran, Saudi Arabia, and housed at the Khobar Towers complex. At the time of the Attack, Mr. Sweazy had just showered and was sitting on his couch on the seventh floor of Building 110. Suddenly, the television flickered, and the glass doors and windows blew out, spraying shards of glass directly at him. Mr. Sweazy quickly dropped to the ground and dragged himself across the floor to find clothing. He then went to search for his roommates and found one of them in the shower with a large shard of glass impaled in his neck. Mr. Sweazy painstakingly removed the piece of glass from his roommate's neck, found his clothing, and helped him evacuate the building. While in the stairwell, Mr. Sweazy heard other people calling for help and used his body to open doors barricaded by debris, injuring himself in the process. At one point, he was trampled by panicked people rushing to escape the building. Once outside, Mr. Sweazy witnessed complete chaos and destruction. He carried wounded people to triage, further injuring himself. Mr. Sweazy remained at triage for hours attending to the wounded. For forty-eight hours straight Mr. Sweazy worked tirelessly assisting with the FBI investigation. Mr. Sweazy was awarded an Air Force Achievement Medal, a Certificate of Appreciation, and an Armed Forces Expeditionary Medal for his actions following the Attack. He was also nominated for Airman of the Month. Mr. Sweazy suffered significant and permanent physical and psychological injuries from the Attack, and as a result, he has past and future noneconomic damages, including severe mental pain and suffering and loss of enjoyment of life.

87.    **Plaintiff Janice Caroll Rice Sweazy** is a United States citizen and is domiciled in the State of Texas. She is the parent of Jerron Keith Sweazy.

88.    **Plaintiff Warren Eugene Sweazy** is a United States citizen and is domiciled in the State of Texas. He is the parent of Jerron Keith Sweazy.

89.     **Plaintiff Brenda Jean Sweazy** is a United States citizen and is domiciled in the State of Texas. She is the sibling of Jerron Keith Sweazy.

90.     **Plaintiff Michael Wade Sweazy** is a United States citizen and is domiciled in the State of Texas. He is the sibling of Jerron Keith Sweazy.

91.     As a result of the June 25, 1996, attack and Jerron Keith Sweazy's injuries, family members, Janice Caroll Rice Sweazy, Warren Eugene Sweazy, Brenda Jean Sweazy, and Michael Wade Sweazy, suffered severe mental anguish, extreme emotional pain and suffering, loss of solatium, and loss of services. The injuries suffered by Jerron Keith Sweazy continue to have a lasting effect on his family members and have taken a significant toll on their relationships.

92.     **Plaintiff James Veronal Buckmon, III, MSgt, USAF (Ret)** is a United States citizen and is domiciled in the State of Ohio. On June 25, 1996, Mr. Buckmon, age 28, was serving as a Staff Sergeant for the 36th Munitions Squadron of the United States Air Force, stationed in Dhahran, Saudi Arabia, and housed at the Khobar Towers complex. At the time of the Attack, Mr. Buckmon was falling asleep in his bed on the third floor of Building 104. Suddenly, he was jolted awake by a loud boom and the sound of glass shattering. He was thrown out of his bed and slammed into a wall locker from the force of the blast wave. The room went dark and filled with smoke. When Mr. Buckmon gathered his senses, he rushed out of the room. He was not wearing shoes and therefore sustained numerous lacerations to his feet from the shards of glass that blanketed the floors. Mr. Buckmon quickly made his way down the smoky stairwell and outside into the chaotic scene. All he could hear were sirens and screaming. Mr. Buckmon ran through the complex, following others to the Desert Rose, the makeshift triage, where he witnessed gruesome injuries as he awaited treatment. For days after the Attack, Mr. Buckmon assisted with the evacuation of personnel and with the cleanup of the destruction caused by the bomb and was

exposed to hazardous conditions and debris. Mr. Buckmon was awarded an Air Force Commendation Medal First Oak Leaf Cluster for his actions following the Attack. Mr. Buckmon suffered significant and permanent physical and psychological injuries from the Attack, and as a result, he has past and future noneconomic damages, including severe mental pain and suffering and loss of enjoyment of life.

93.    **Plaintiff Patricia Denise Buckmon** is a United States citizen and is domiciled in the State of Ohio. She is the spouse of James Veronal Buckmon, III.

94.    **Plaintiff Corey Dwayne Dunlap** is a United States citizen and is domiciled in the State of Nevada. He is the child of James Veronal Buckmon, III.

95.    **Plaintiff Jasmin Nichole Logan** is a United States citizen and is domiciled in the State of Georgia. She is the child of James Veronal Buckmon, III.

96.    **Plaintiff Shanice Symone Buckmon** is a United States citizen and is domiciled in the State of Ohio. She is the child of James Veronal Buckmon, III.

97.    **Plaintiff Shakiyla Chante Buckmon** is a United States citizen and is domiciled in the State of Ohio. She is the child of James Veronal Buckmon, III.

98.    As a result of the June 25, 1996, attack and James Veronal Buckmon, III's injuries, family members, Patricia Denise Buckmon, Corey Dwayne Dunlap, Jasmin Nichole Logan, Shanice Symone Buckmon, and Shakiyla Chante Buckmon, suffered severe mental anguish, extreme emotional pain and suffering, loss of solatium, and loss of services. The injuries suffered by James Veronal Buckmon, III continue to have a lasting effect on his family members and have taken a significant toll on their relationships.

99.     **Plaintiff Edward Earl Whitley, CMSgt, USAF (Ret)** is a United States citizen and is domiciled in the State of North Carolina. On June 25, 1996, Mr. Whitley, age 43, was serving as a Chief Master Sergeant in the United States Air Force, stationed in Dhahran, Saudi Arabia, and housed at the Khobar Towers complex. At the time of the Attack, Mr. Whitley was sitting on his bed in his room on the sixth floor of Building 127 when he heard a loud explosion. A metal window frame blew out of the cement wall and onto Mr. Whitley's bed, narrowly missing him. Glass shattered and propelled into the room. Dust and smoke filled the air. Mr. Whitley's ears were ringing loudly. He rushed to check on his suitemates and found one of them unconscious on his bed. He dragged the man to safety and waited there until others with flashlights came to help him carry the injured man out of the building. Mr. Whitley continued to carry other wounded personnel out of buildings and bring them to safe locations or triage.  In the days that followed, Mr. Whitley was in charge of managing munitions, providing wellness checks, participating in the cleanup, and searching the devastated complex for pieces of the bomb and human remains.  Mr. Whitley was offered a Meritorious Service Award for his actions following the Attack, but he declined the award. Mr. Whitley suffered significant and permanent physical and psychological injuries from the Attack, and as a result, he has past and future noneconomic damages, including severe mental pain and suffering and loss of enjoyment of life.

100.    **Plaintiff Mary Clarise Whitley** is a United States citizen and is domiciled in the State of North Carolina. She is the spouse of Edward Earl Whitley.

101.    **Plaintiff Christina Nicole Whitley** is a United States citizen and is domiciled in the State of North Carolina. She is the child of Edward Earl Whitley.

102.    **Plaintiff Janna Marie-Louise Kentrolis** is a United States citizen and is domiciled in the State of North Carolina. She is the child of Edward Earl Whitley.

103.    As a result of the June 25, 1996, attack and Edward Earl Whitley's injuries, family members, Mary Clarise Whitley, Christina Nicole Whitley, and Janna Marie-Louise Kentrolis, suffered severe mental anguish, extreme emotional pain and suffering, loss of solatium, and loss of services. The injuries suffered by Edward Earl Whitley continue to have a lasting effect on his family members and have taken a significant toll on their relationships.

104.    **Plaintiff Steven Ray Matteson** is a United States citizen and is domiciled in the State of Virginia. On June 25, 1996, Mr. Matteson, was serving as a Private First Class for the 147th Maintenance Company of the United States Air Force, stationed in Dhahran, Saudi Arabia, and housed at the Khobar Towers complex. At the time of the Attack, Mr. Matteson was in Building 128, watching television with a friend. Suddenly, there was a flash of light, and the television went out. Mr. Matteson watched as the concrete walls of the room sucked inward, then blew out. The glass balcony door shattered, and shards of glass burst into the room. Mr. Matteson's body was lacerated by flying glass and debris. The air was filled with dust, and without electricity, the room was completely dark. Despite his own injuries, Mr. Matteson carried a friend down four flights of stairs, running barefoot through broken glass and piles of debris. Mr. Matteson then rushed to triage, where he received treatment for a severe injury to his face caused by flying glass. While at triage, he was nearly trampled when dozens of people, thinking they were under another attack, barreled their way to find safety. Mr. Matteson was eventually loaded into an ambulance and taken to a hospital where he received extensive treatment, including countless stitches. Mr. Matteson was awarded a Purple Heart for his injuries from the Attack. Once he recovered enough to return to work, Mr. Matteson stood guard at the complex, constantly on high alert and ready to defend against another attack. Mr. Matteson suffered significant and permanent physical and

psychological injuries from the Attack, and as a result, he has past and future noneconomic damages, including severe mental pain and suffering and loss of enjoyment of life.

105. **Plaintiff Nicole Marie Van Name** is a United States citizen and is domiciled in the State of Kansas. On June 25, 1996, Ms. Van Name, age 22, was serving as a Financial Specialist in the United States Air Force, stationed in Dhahran, Saudi Arabia, and housed at the Khobar Towers complex. At the time of the Attack, Ms. Van Name was sitting on a couch watching television on the third floor of Building 128. Suddenly, she heard a rumbling noise and the television flickered. The sliding glass doors directly in front of her exploded. Shards of broken glass and pieces of the metal door frame pelted Ms. Van Name. She felt an intense burning sensation in her legs, and she was bleeding profusely from her arm. Ms. Van Name was carried out of the building and rushed to triage for immediate medical care. She was transported to a hospital where she received numerous stitches for lacerations to her body and a sling for her injured arm. Ms. Van Name spent the next several days cleaning her office which had been damaged in the Attack and retrieving the belongings of her fellow service members who were killed or severely injured, to send back to their families. Ms. Van Name was awarded a Purple Heart, an Armed Forces Expeditionary Medal, and an Air Force Outstanding Unit Award for her injuries and actions following the Attack. Ms. Van Name suffered significant and permanent physical and psychological injuries from the Attack, and as a result, she has past and future noneconomic damages, including severe mental pain and suffering and loss of enjoyment of life.

106. **Plaintiff Ray Antonio Wagstaff** is a United States citizen and is domiciled in the State of Maryland. On June 25, 1996, Mr. Wagstaff, age 20, was serving as an Automated Logistical Specialist for the 147th Maintenance Company of the United States Army, stationed in Dhahran, Saudi Arabia, and housed at the Khobar Towers complex.  At the time of the Attack, Mr.

Wagstaff was sitting on a couch talking with a friend in Building 113. Suddenly, Mr. Wagstaff heard a rumbling sound and felt a blast wave, which threw him to the ground, injuring his shoulder. Windows and glass doors shattered around him, lacerating his body. He inhaled the dust and smoke that filled the room and made his way carefully out of the debris-strewn building. He ran to the armory to get his weapon and prepared to defend the complex from additional attacks. Mr. Wagstaff spent the remainder of the night on high alert, standing guard outside the barracks and witnessing gruesome scenes of people with severe injuries, which caused him severe emotional distress. He was awarded an Armed Forces Expeditionary Medal for his actions following the Attack. Mr. Wagstaff suffered significant and permanent physical and psychological injuries from the Attack, and as a result, he has past and future noneconomic damages, including severe mental pain and suffering and loss of enjoyment of life.

107.    **Plaintiff Timothy Michael Raymond** is a United States citizen and is domiciled in the State of New Jersey. On June 25, 1996, Mr. Raymond, age 20, was serving as an Airman First Class for the 4404th Security Police Squadron of the United States Air Force, stationed in Dhahran, Saudi Arabia, and housed at the Khobar Towers complex. At the time of the Attack, Mr. Raymond was on the seventh floor of Building 104, watching television in the day room. Suddenly, the lights flickered, and the television went out. Mr. Raymond saw the glass door in the room blow outward and then shatter inward, spraying glass shards directly at him. The room was in complete disarray and covered in debris. Mr. Raymond crawled over furniture and through broken glass to escape. The halls were filled with smoke and dust, which he inhaled with each breath. Outside, he saw a mushroom-like cloud surrounding Building 131. Despite his injuries, Mr. Raymond was instructed to get into uniform and get armed to evacuate and guard the bombed building. At the bomb site, Mr. Raymond came across the bodies of three Airmen killed in the Attack. Instead of

processing the situation, he attempted to console the more panicked and injured servicemembers and then resumed his guard duties. While guarding Building 131, Mr. Raymond saw an unknown man approaching the area, prompting Mr. Raymond to hold him at gunpoint until others took him into custody. He spent the next several days standing guard alone in a constant state of high alert watching for additional attackers with instructions to shoot. He was awarded an Armed Forces Expeditionary Medal, an Air Force Commendation Medal with Valor, and a Certificate of Appreciation for his actions following the Attack. Mr. Raymond suffered significant and permanent physical and psychological injuries from the Attack, and as a result, he has past and future noneconomic damages, including severe mental pain and suffering and loss of enjoyment of life.

108.   **Plaintiff Cecil Ben Dills** is a United States citizen and is domiciled in the State of Missouri. On June 25, 1996, Mr. Dills, age 22, was serving as a Senior Airman and Avionics Specialist for the 58th Fighter Squadron of the United States Air Force, stationed in Dhahran, Saudi Arabia, and housed at the Khobar Towers complex. At the time of the Attack, Mr. Dills was lying in his bed on the first floor of Building 131. Suddenly, he felt a strong wave of pressure come over him and heard a thunderous explosion. The lights in his room went out, and the air around him filled with thick dust. He tasted smoke and sand in his mouth. Mr. Dills hastily put on his clothes and boots, which were filled with shards of glass from the shattered windows, lacerating his bare feet. Outside his building, there was overwhelming panic and hysteria. Mr. Dills took cover in another building in fear of additional attacks. He later joined his unit at the triage center, where he consoled service members, provided emergency first aid, and loaded severely injured personnel into ambulances. Mr. Dills was devastated to learn of the loss of a close friend in the Attack. Mr. Dills was awarded a Purple Heart for his injuries in the Attack and an Air Force Achievement

Medal for Meritorious Service, an Armed Forces Expeditionary Medal, and a Certificate of Appreciation for his actions following the Attack. Mr. Dills suffered significant and permanent physical and psychological injuries from the Attack, and as a result, he has past and future noneconomic damages, including severe mental pain and suffering and loss of enjoyment of life.

109.    **Plaintiff Jeannie Marie Meek** is a United States citizen and is domiciled in the State of Missouri. She is the sibling of Cecil Ben Dills.

110.    As a result of the June 25, 1996, attack and Cecil Ben Dills' injuries, family member, Jeannie Marie Meek, suffered severe mental anguish, extreme emotional pain and suffering, loss of solatium, and loss of services. The injuries suffered by Cecil Ben Dills continue to have a lasting effect on his family member and have taken a significant toll on their relationship.

111.    **Plaintiff Curtis Lee Van Meter** is a United States citizen and is domiciled in the State of Florida. On June 25, 1996, Mr. Van Meter, age 37, was serving as an Aircraft Electrician for the 33rd Tactical Fighter Wing of the United States Air Force, stationed in Dhahran, Saudi Arabia, and housed at the Khobar Towers complex.  At the time of the Attack, Mr. Van Meter was sitting on his bed in Building 127. Suddenly, he was blown off the bed by an explosion. He was slammed headfirst into a concrete wall and knocked unconscious. When he came to, he was being dragged out of the building by fellow servicemembers. Pain radiated throughout his body. Mr. Van Meter was taken to triage and then sent to a hospital to be treated for a severe gash across his face. Mr. Van Meter suffered intense headaches, nausea, and vomiting for days following the Attack. He was awarded a Purple Heart and Certificate of Appreciation for his injuries and actions following the Attack. Mr. Van Meter suffered significant and permanent physical and psychological injuries from the Attack, and as a result, he has past and future noneconomic damages, including severe mental pain and suffering and loss of enjoyment of life.

112.    **Plaintiff Erin David Howard** is a United States citizen and is domiciled in the State of Texas. He is the child of Curtis Van Meter.

113.    **Plaintiff Jessica Nicole Swift** is a United States citizen and is domiciled in the State of Missouri. She is the child of Curtis Lee Van Meter.

114.    **Plaintiff Jordan Marlene VanMeter** is a United States citizen and is domiciled in the State of Tennessee. She is the child of Curtis Lee Van Meter.

115.    **Plaintiff Pierce Nathaniel Van Meter** is a United States citizen and is domiciled in the State of Oklahoma. He is the child of Curtis Lee Van Meter.

116.    As a result of the June 25, 1996, attack and Curtis Lee Van Meter's injuries, family members, Erin David Howard, Jessica Nicole Swift, Jordan Marlene VanMeter, and Pierce Nathaniel Van Meter, suffered severe mental anguish, extreme emotional pain and suffering, loss of solatium, and loss of services. The injuries suffered by Curtis Lee Van Meter continue to have a lasting effect on his family members and have taken a significant toll on their relationships.

117.    **Salvatore Capaccio** is a United States citizen and is domiciled in the State of New York. On June 25, 1996, Mr. Capaccio, age 21, was serving as a Senior Airman in the United States Air Force, stationed in Dhahran, Saudi Arabia, and housed at the Khobar Towers complex. At the time of the Attack, Mr. Capaccio was in Building 124. Mr. Capaccio suffered significant and permanent physical and psychological injuries from the Attack. He was awarded an Outstanding Unit Award with Valor for his actions following the Attack. On June 27, 2019, this Court entered final judgment on liability and damages in favor of Mr. Capaccio for the June 25, 1996, Khobar Towers attack.

118.   **Plaintiff Nancy Patricia DiMarco** is a United States citizen and is domiciled in the State of New York. She is the stepparent of Salvatore Capaccio.

119.   As a result of the June 25, 1996, attack and Salvatore Capaccio's injuries, family member, Nancy Patricia DiMarco, suffered severe mental anguish, extreme emotional pain and suffering, loss of solatium, and loss of services. The injuries suffered by Salvatore Capaccio continue to have a lasting effect on his family member and have taken a significant toll on their relationship.

## B. <u>Defendants</u>

120.   Defendant The Islamic Republic of Iran has been designated a state sponsor of terrorism pursuant to Section 6(j) of the Export Administration Act of 1979, (50 U.S.C. § 2405(j)) continuously since January 19, 1984.

121.   The Government of Iran is politically and ideologically hostile to the United States and its allies. It has consistently provided material support for acts of international terrorism, including extrajudicial killings, torture, and hostage takings, particularly through the MOIS, IRGC, and its Lebanese-based Hezbollah, which historically have served as Iran's proxies and agents. In doing so, these organizations have enabled Iran to project extremist violence and terror throughout the Middle East and around the globe.

122.   More specifically, Iran provides sponsorship, material support, and resources to Hezbollah, a known terrorist organization, by providing it with funding, weapons, direction, and training to carry out terror attacks consisting of extrajudicial killings, torture, and hostage-taking as those terms are defined in the FSIA, 28 U.S.C. § 1605A(a)(1).

123.    The formation and emergence of Hezbollah as a major terrorist organization is largely due to the government of Iran. The MOIS and the IRGC have been the primary instruments used by Iran to provide Hezbollah with funding, training, weapons, and other essential material support.

124.    The significant support provided by Iran enables Hezbollah to be a terror organization capable of recruiting terrorists and carrying out large-scale terrorist attacks, like the attack on the Khobar Towers Complex.

125.    The Islamic Republic of Iran has been found to be liable as a foreign state supporting international terrorism under 28 U.S.C. § 1605A (and its predecessor 28 U.S.C. § 1605(a)(7)) to victims of state-sponsored terrorism for the acts and actions of Hezbollah in cases before this Court, including, *Anderson v. The Islamic Republic of Iran,* 90 F. Supp. 2d 107 (D.D.C. 2000) and *Cicippio v. Islamic Republic of Iran*, 18 F. Supp. 2d 62 (D.D.C. 1998).

126.    The Islamic Republic of Iran has also been found liable by this court for the June 25, 1996, Attack on the Khobar Towers, which is the subject of this Complaint. See, *Rimkus v. Islamic Republic of Iran,* 575 F. Supp. 2d 181 (D.D.C. 2008); *Blais v. Islamic Republic of Iran, et al.*, 459 F. Supp. 2d 40 (D.D.C. 2006); *Estate of Heiser v. Islamic Republic of Iran*, 466 F. Supp. 2d 229 (D.D.C. 2006).

127.    Describing the role Iran and its agents played in the attack on Khobar Towers, the court in *Rimku*s stated as follows:

"The totality of the evidence at trial, combined with the findings and conclusions entered by this court in *Blais* and *Heiser*, firmly establishes that the Khobar Towers bombing was planned, funded, and sponsored by senior leadership in the government of the Islamic Republic of Iran, the IRGC had the responsibility and worked with Saudi Hezbollah to execute the plan, and the MOIS participated in the planning and funding of the

44

attack." *Rimkus v. Islamic Republic of Iran, et al.,* 575 F. Supp. 2d 181
(D.D.C. August 26, 2008).

128.    The Islamic Republic of Iran is thus collaterally estopped from denying that it is

liable for the acts and actions of its agent, Hezbollah in carrying out the terrorist attack at issue

here.

129.    Defendant MOIS is the Iranian  intelligence service and functions both within and

beyond Iranian territory. It supports Iran's international terrorist activities by providing material

support, including resources and intelligence, for the commission of acts of extrajudicial killing,

torture, and hostage-taking. This Court has consistently found MOIS to be a political subdivision

of Iran for purposes of liability and damages under the FSIA.[3]

130.    Here, MOIS, acting as an agent of Iran, performed acts that caused the terrorist

bombing  of Khobar  Towers. The MOIS  assisted  Hezbollah's  terrorist  activities  through  the

provision  of  material  support  and  resources  including  intelligence,  funds,  training,  and

supplying weapons and direction to Hezbollah.  MOIS performed  these acts while acting within

the scope of its agency for Iran, and specifically performed these acts in support of Hezbollah's

bombing of the  Khobar  Towers on June 25, 2006.

131.    This Court has repeatedly held Defendants Iran and MOIS liable as state sponsors

of Hezbollah's terrorist activities pursuant to 28 U.S.C. § 1605(a)(7), predecessor to § 1605A.[4]

---

[3] *See, e.g.*, *Valore v. Islamic Republic of Iran*, 700 F. Supp. 2d 52, 71-722 (D.D.C. 2010); *Bennett v. Islamic Republic of Iran*, 507 F. Supp.2d 117, 125 (D.D.C. 2007) ("Defendant MOIS is considered to be a division of the state of Iran, and is treated as a member of the state of Iran itself."); *Salazar v. Islamic Republic of Iran*, 370 F.Supp.2d 105, 116 (D.D.C. 2005).
[4] *See, e.g., Surette v. Islamic Republic of Iran,* 231 F. Supp. 2d 260, 267 (D.D.C. 2002); *Stethem v. Islamic Republic of Iran,* 201 F. Supp. 2d 78 (D.D.C. 2002); *Wagner v. Islamic Republic of Iran,* 172 F. Supp.2d 128 (D.D.C. 2001); *Jenco v. Islamic Republic of Iran*, 154 F.Supp.2d 27 (D.D.C. 2001); *Sutherland v. Islamic Republic of Iran*, 151 F. Supp.2d 27 (D.D.C. 2001); *Anderson v. Islamic Republic of Iran,* 90 F. Supp.2d 107 (D.D.C. 2000).

132.    Defendant IRGC, also known as Pasdaran, is a military organization and a branch of the Islamic Republic of Iran.

133.    IRGC has been described as "a nontraditional instrumentality of Iran" that acts as "the military arm of a kind of shadow government answering directly to the Ayatollah and the mullahs who hold power in Iran." *Rimkus v. Islamic Republic of Iran*, 575 F. Supp. 2d at 187 (citing *Heiser,* 466 F. Supp. 2d at 251-52 and *Blais*, 459 F. Supp. 2d at 47).

134.    IRGC "constitute[s] [an] integral part[] of Iran's political structure, and thus, constitute[s] a foreign state for [FSIA] purposes." *Akins v. Islamic Republic of Iran*, 332 F. Supp. 3d 1 (D.D.C. 2018).

135.    Founded after the 1979 Islamic Revolution in Iran, IRGC has become a powerful military instrument for defending the Islamic fundamentalist revolution and the Islamic Republic of Iran and is dedicated to the export of Islamic Fundamentalism principles throughout the world through acts of terrorism.

136.    IRGC is the agent through which Iran prepared and oversaw the actions relating to the bombing of the Khobar Towers in Dhahran, Saudi Arabia on June 25, 1996, IRGC, acting as an agent of the Islamic Republic of Iran, performed acts within the scope of its agency, within the meaning of 28 U.S.C. § 1605A, as a conduit for the Islamic Republic of Iran's provision of funds, training, and direction to Hezbollah for its terrorist activities that caused the injuries to Plaintiffs herein.

137.    IRGC has consistently been found liable as a foreign state supporting international terrorism under 28 U.S.C. § 1605(a)(7) for the acts and actions of Hezbollah in cases before this Court including, *Higgins v. The Islamic Republic of Iran*, Civ. No. 99-377(RCL) (D.D.C. 2000);

*Surette v. Islamic Republic of Iran*, Case No. 01-570 (D.D.C. 2002); *Salazar v. Islamic Republic of Iran*, 370 F. Supp. 2d 105 (D.D.C. 2005); *Levin v. Islamic Republic of Iran*, 529 F. Supp. 2d 1 (D.D.C. 2007).

138.    IRGC has been also found liable by this Court for overseeing the actions in the attack on the Khobar Towers as detailed in the factual allegations below. See, *Heiser v Islamic Republic of Iran*, 466 F. Supp. 2d 229 (D.D.C. 2006); *Blais v. Islamic Republic of Iran,* 459 F. Supp. 2d 40 (D.D.C. 2006).

### III. FACTUAL ALLEGATIONS

139.    In the early 1980s, Iran developed a program of carefully planned terrorist attacks designed to destabilize Middle Eastern governments and spread fundamentalist Islamic principles. To achieve its goal, Iran, through MOIS and IRGC, established Hezbollah in Lebanon as its proxy terror organization to employ tactics such as kidnapping, torture, and murder. MOIS and IRGC provided funding, training, and equipment to Hezbollah enabling it to pursue and achieve its mission. By the early 1990s, the activities of Hezbollah were no longer limited to Lebanon. Its operatives were operating in a number of countries utilizing the tactics taught to them in Iran and the Bekka Valley in Lebanon at facilities established, operated, and supported by the Defendants.

140.    In the early 1990s, the United States military developed a presence in Saudi Arabia. Iran viewed the presence of United States personnel, including members of the United States armed forces, as supportive of the corrupt Saudi monarchy, and its pro-Western regime, which opposed the Islamic Republic's religious and political ideals and the establishment of an Islamic state in Saudi Arabia. Iran believed that a large-scale terrorist operation designed to kill Americans, which would lead to significant casualties, would weaken support in the U.S. and its allies for its presence in the region, or weaken support in the host nations for a continued U.S. presence.

141.    To that end, the Iranian government, acting through its agents MOIS and IRGC, and in concert with the Saudi-based Hezbollah terrorist organization, began preparations for the bombing of a target associated with American interests.[5]

142.    In 1995, Iran, through MOIS and the IRGC, prepared to execute an attack on an American target. Saudi Hezbollah operatives scouted potential American targets in Saudi Arabia, and explosives were smuggled into Saudi Arabia and hidden for later use. An elaborate professional intelligence network was established and tasked with carrying out the bombing.

143.    The attack itself was approved and supported by Ayatollah Khomeini, Iran's Supreme Leader at the time, and by Ali Fallaahian, the then-head of MOIS who provided intelligence security support for the operation and received direct support from his representative in Damascus, Syria.[6]

144.    Individuals were recruited principally by a senior official of the IRGC, Brigadier General Ahmed Sharifi. Sharifi, who was the operational commander, planned the operation and recruited individuals for the operation at the Iranian embassy in Damascus, Syria. [7]

145.    By June 1996, bomb components, including high explosives, incendiary materials, and sophisticated fuses and tools used in the bomb assembly, were stored in Saudi Arabia. Agents of Defendants Iran, MOIS, and the IRGC collectively selected and approved Khobar Towers as the target to be destroyed by Hezbollah.

---

[5] Saudi Hezbollah members provided information about how each was recruited and trained by the Iranian government and stated that the selection of the target and the authorization to proceed was done collectively by Iran, MOIS, and IRGC, though the actual preparation and carrying out of the attack was done by the IRGC. (Dec. 18, 2003 Tr. at 25.) See *Heiser*, 466 F Supp.2d at 252-253.
[6] *Blais*, 459 F Supp2d at 48; *Heiser*, 466 F. Supp.2d at 252.
[7] *Id.*

146.    The Khobar Towers complex was a residential multi-story apartment building complex in Dhahran, Saudi Arabia that housed United States Air Force and other U.S. military and coalition forces personnel charged with monitoring compliance with U.N. security council resolutions. The deployment of U.S. troops to the region was considered a peacetime deployment with a friendly host country.[8]

147.    On the evening of June 25, 1996, shortly before 10:00 p.m. local time, two men drove a stolen Mercedes Benz gasoline tanker truck loaded with at least 5,000 pounds of plastic explosives into the Saudi compound that surrounded the American sector at the al-Khobar military area near Dhahran. The terrorists parked the truck next to the Khobar Towers complex, approximately 80 feet from a building that housed the American personnel.[9] The men drove away in a stolen getaway vehicle. A few minutes later, the 5,000-pound truck bomb was detonated. The resulting blast sheared off the entire face of the Khobar Towers complex and shattered windows in virtually every building in the compound and in surrounding buildings up to a mile away.

148.    The truck bomb used in the attack "was assembled at a terrorist base in the Bekka Valley which was jointly operated by the IRGC and by the terrorist organization known as Hezbollah."[10]

149.    Investigators determined that the force of the explosion was the equivalent of 20,000 pounds of TNT, which was, according to the Department of Defense, "the largest non-nuclear explosion ever up to that time."[11]

---

[8] *Blais* 459 F Supp.2d at 47; *Heiser* 466 F. Supp.2d at 251.
[9] Referring to Building 131
[10]  See, *Blais*, 459 F. Supp. 2d at 48.
[11] *Id.*

150.    The explosion killed dozens of persons including 19 American servicemembers and injured hundreds of others.  The blast was so powerful that it heavily damaged or destroyed six high-rise apartment buildings and shattered windows in virtually every other structure in the compound and was felt 20 miles from the blast site.[12]

151.    Each of the named Defendants collaborated, designed, directed, incited, financed, provided material support, aided, abetted, conspired, and executed acts of terror with Hezbollah. Without the direction and support from Iran, MOIS, and IRGC, Hezbollah would otherwise not have had the expertise and skills needed to carry out the attack on the Khobar Towers.

152.    As a result of the June 25, 1996, attack, Plaintiffs Col. Kevin Bryan St. John, John Charles Young, II, SSgt, USAF (Ret), The Estate of James Elliott Kegan, TSgt, USAF (Ret), Todd Scott Rafaiani, Norman Edward Brown, Vincent Bruce Jobson, Leonard Dixon, Jr., SMSgt, USAF (Ret), Bobby Gene Castleman, Jr., SMSgt, USAF (Ret), Christopher Dale Sample, Jason Alexander Umberger, Michael Roy Manibusan, Erica Marie Belcher, The Estate of John Thomas Belcher, Patrick William O'Connor, Jr., Shawn Berdell Kirkpatrick, Michael Brent Willis, Terry Fitzgerald Haywood, SSgt, USAF (Ret), Mario Jaime Valencia, Travis Keith Butikofer, SMSgt, USAF (Ret), James Dan Sikes, TSgt, USAF (Ret), Richard Kevin Fesenbek, MSgt, USAF (Ret), Terrence David Dammer, MSgt USAF (Ret), The Estate of Craig Thomas Brown, MSgt, USAF (Ret), Timothy Shane Seeley, Jerron Keith Sweazy, MSgt, USAF (Ret), James Veronal Buckmon, III, MSgt, USAF (Ret), Edward Earl Whitley, CMSgt, USAF (Ret), Steven Ray Matteson, Nicole Marie Van Name, Ray Antonio Wagstaff, Timothy Michael Raymond, Cecil Ben Dills, and Curtis Lee Van Meter, (collectively "Injured Servicemember Plaintiffs") suffered serious physical injury,

---

[12] House National Security Committee Press Release, Floyd D. Spence, Chairman; August 14, 1996.

extreme mental anguish, pain and suffering, and loss of enjoyment of life, which have resulted in past and future non-economic damages.

153.    As a result of the June 25, 1996, attack, Ralph Michael Kegan, James Paul Kegan, Carolyn Louise Cline, Katherine Ann Hunt, Frances Kay Rafaiani, Lawrence Eugene Rafaiani, Leslie Marie Core, Nathaniel Wayne Hill, Wayne Earl Hill, Brandon Michael Hill, Heather Marie Miller, Virginia Houde Jobson, Krystofer Mykael Houde Schofield, Kathrine Elizabeth Sample, Christopher Malcolm Umberger, Jennifer Carreon Manibusan, Yolanda Mazzara, Michael Joseph Mazzara, Susan Angela Jones, Ryan Charles O'Connor, Shelly Rae Willis, Donald Ardrain Anderson, Trina Denise Anderson, Sylvia Marie Wilson, Keith Rey Butikofer, Denice Marie Morgan, Bryan Keith Butikofer, Tyler Rey Butikofer, Rebecca Lyn Jensen, Megan Marie Sterling, Tyrel Zachary Jensen, Monica Sanchez Lopez, Micah Drew Sikes, Ronald Duane Sikes, Lowell Jeffrey Sikes, Jerry Lynn Sikes, Anna Louise Dammer, Christopher Michael Dammer, Giray Diane Berger, Lynnette Ann Brown, Courtney Tate Pleva, Lindsay Ann Brown, Janice Caroll Rice Sweazy, Warren Eugene Sweazy, Brenda Jean Sweazy, Michael Wade Sweazy, Patricia Denise Buckmon, Corey Dwayne Dunlap, Jasmin Nichole Logan, Shanice Symone Buckmon, Shakiyla Chante Buckmon, Mary Clarise Whitley, Christina Nicole Whitley, Janna Marie-Louise Kentrolis, Jeannie Marie Meek, Erin David Howard, Jessica Nicole Swift, Jordan Marlene VanMeter, Pierce Nathaniel Van Meter, and Nancy Patricia DiMarco (collectively "Immediate Family Member Plaintiffs") have suffered severe mental anguish, extreme emotional distress, pain and suffering, loss of solatium, loss of consortium, and loss of society, services, and companionship.

154.    The Defendants' actions were a substantial factor in the sequence of events that led to the Plaintiffs' significant and permanent physical and psychological injuries. Such injuries were reasonably anticipated as a natural consequence of the Defendants' conduct.

155.     As such, Defendants are directly, jointly, and severally liable for the injuries suffered by Plaintiffs and should, therefore, be held accountable.

## IV. CLAIMS FOR RELIEF

### COUNT I

### ACTION FOR DAMAGES - GENERAL
### By All Plaintiffs
### (Under 28 U.S.C. § 1605A(c))

156.     Plaintiffs repeat, re-allege, and incorporate by reference those facts and allegations set forth in all the foregoing paragraphs as if fully set forth herein.

157.     Defendant Iran is, and was at all times relevant, a State Sponsor of Terrorism within the meaning of § 1605A(h)(6).

158.     Defendants MOIS and IRGC are each political subdivisions of the State of Iran and as such are treated as the State of Iran for purposes of bringing suit under 28 U.S.C. §1603(a).

159.     Defendants Iran, MOIS, and IRGC provided substantial, material support and resources to its agent, Hezbollah, within the meaning of 28 U.S.C. Section 1605A, which facilitated and caused the terror attack on the Khobar Towers complex.

160.     Defendants funded, trained, directed, aided, abetted, conspired, and acted in concert with Hezbollah in sponsoring and carrying out the "extrajudicial killing" of American servicemembers at the Khobar Towers complex and are therefore directly liable and vicariously responsible for Hezbollah's actions.

161.     The material support provided by Defendants for the act of extrajudicial killing resulted in 19 deaths and countless personal injuries of U.S. servicemembers, including Plaintiffs, who survived the attack.

162.     Plaintiffs herein are Injured Servicemember Plaintiffs and Immediate Family Member Plaintiffs who were injured as a result of the bombing of Khobar Towers. All Plaintiffs were nationals of the United States at the relevant time of the Attack, and thus, are entitled to bring claims under Section 1605A(c).

163.     The Plaintiffs suffered severe harm, including personal injury, emotional distress, mental anguish, pain and suffering, loss of companionship and society, loss of solatium and consortium, and loss of services as a direct and proximate cause of the actions of Defendants Iran, MOIS, and the IRGC acting through their agent Hezbollah.

164.     Defendants MOIS and IRGC, acting on their own as well as agents of the Islamic Republic of Iran, performed acts within the scope of their agency which also caused the injuries to Plaintiffs within the meaning of 28 U.S.C. § 1605A.

165.     The conduct of Iran, MOIS, and IRGC was criminal in nature, outrageous, extreme, wanton, willful, malicious, and constitutes a threat to the public warranting an award of punitive damages under 28 U.S.C. Section 1605A(c).

166.     Defendants Iran, MOIS, and IRGC are therefore liable for the full amount of Plaintiffs' noneconomic damages, solatium, pain and suffering, and punitive damages under 28 U.S.C. 1605A(c), jointly and severally, in an amount to be determined herein.

## COUNT II

### PERSONAL INJURY – ASSAULT AND BATTERY
### By Injured Servicemember Plaintiffs
### (Under 28 U.S.C. § 1605A(c))

167.     Plaintiffs repeat, re-allege, and incorporate by reference those facts and allegations forth in all the foregoing paragraphs as if fully set forth herein.

168.     Hezbollah, with the material support of the Defendants Iran, MOIS, and the IRGC, violently and forcefully committed illegal acts during the bombing of the Khobar Towers complex.

169.     Defendants and its agents intended to and did cause great physical injury and harm, and fear and apprehension of imminent harm to the Injured Servicemember Plaintiffs, by detonating and/or causing the detonation of a powerful explosive device, described as the equivalent of 20,000 pounds of TNT, in their immediate proximity, causing numerous casualties and destruction.

170.     These willful, wrongful, and intentional acts constitute a violent assault and battery upon the bodies and minds of the Injured Servicemember Plaintiffs.

171.     As a direct and proximate result of the willful, wrongful, and intentional acts of Hezbollah, with the material support of the Defendants Iran, MOIS, and IRGC, Injured Servicemember Plaintiffs suffered extreme mental anguish, physical injury, and pain and suffering.

172.     For the reasons stated above, Defendants are jointly and severally liable to Plaintiffs for their injuries in an amount to be determined herein.

## COUNT III

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### By Injured Servicemember Plaintiffs
### (Under 28 U.S.C. § 1605A(c))

173.     Plaintiffs repeat, re-allege, and incorporate by reference those facts and allegations set forth in all the foregoing paragraphs as if fully set forth herein.

174.     Defendants provided material support to Hezbollah with the intent that Hezbollah would carry out attacks that would cause Injured Servicemember Plaintiffs severe emotional distress.

175.      The actions of Defendants Iran, MOIS, and the IRGC in providing substantial material support to its agent, Hezbollah, to carry out the attack on the Khobar Towers, with the

intent to kill and injure U.S. military personnel, and which in fact did kill and injure many U.S. Air Force personnel, including Injured Servicemember Plaintiffs, constitute extreme and outrageous conduct intended to cause Plaintiffs severe emotional distress.

176.    The extensive planning and preparation which went into the attack on the Khobar Towers complex further underscore the malicious and heinous nature of the terrorism involved.

177.    The actions by Defendants were undertaken deliberately and recklessly, with the knowledge that they would cause severe emotional distress to the U.S. Air Force personnel injured in the bombing.

178.    The actions of Defendants were intended to and did, in fact, cause the bombing and subsequently were the cause in fact of the Injured Servicemember Plaintiffs' suffering severe emotional distress.

179.    As a direct and proximate result of the actions of the Defendants Iran, MOIS, and IRGC and its agent, Hezbollah, the Injured Servicemember Plaintiffs have suffered severe mental anguish, emotional distress, and pain and suffering.

180.    For the reasons stated above, Defendants are jointly and severally liable to Injured Servicemember Plaintiffs for their intentional infliction of emotional distress in an amount to be determined herein.

## <u>COUNT IV</u>

### <u>INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS</u>
#### <u>By Immediate Family Member Plaintiffs</u>
#### <u>(Under 28 U.S.C. § 1605A)</u>

181.    Plaintiffs repeat, re-allege, and incorporate by reference those facts and allegations set forth in all the foregoing paragraphs as if fully set forth herein.

182.    The actions of Defendants in providing material support for the bombing of the Khobar Towers complex constitute extreme and outrageous conduct intended to cause Plaintiffs severe emotional distress.

183.    The Immediate Family Member Plaintiffs were directly affected by the Defendants' conduct of providing material support to Hezbollah, to carry out extrajudicial killings against the Injured Servicemember Plaintiffs housed at the Khobar Towers complex.

184.    The actions by Defendants were undertaken deliberately and recklessly, with the knowledge that they would cause severe emotional distress to the Immediate Family Member Plaintiffs.

185.    The Immediate Family Member Plaintiffs were aware that the bombing of the Khobar Towers had taken place, knew that their loved ones were present at the Khobar Towers, feared that their loved ones were killed or injured, and ultimately learned that their loved ones survived but were injured in the Attack.

186.    The actions of Defendants were intended to and did, in fact, cause the bombing and subsequently were the cause in fact of the Immediate Family Member Plaintiffs suffering severe emotional distress.

187.    As a direct and proximate result of the actions of the Defendants Iran, MOIS, and IRGC and its agent Hezbollah, the Immediate Family Member Plaintiffs suffered severe mental anguish, emotional distress, and pain and suffering.

188.    For the reasons stated above, Defendants are jointly and severally liable to Immediate Family Member Plaintiffs for the intentional infliction of emotional distress, in an amount to be determined herein.

## COUNT V

## SOLATIUM, CONSORTIUM, PAIN AND SUFFERING
### By Immediate Family Member Plaintiffs
### (Under 28 U.S.C. § 1605A(c))

189.    Plaintiffs repeat, re-allege, and incorporate by reference those facts and allegations set forth in all the foregoing paragraphs as if fully set forth herein.

190.    The actions of the Defendants have caused the Immediate Family Member Plaintiffs to suffer emotional distress, mental anguish, and loss of consortium and solatium.

191.    As a direct and proximate result of the willful, wrongful, intentional, and reckless acts of Hezbollah whose acts were funded and directed by Iran, MOIS, and IRGC, the Immediate Family Member Plaintiffs have been deprived of the assistance, society, companionship, services and other support of their loved ones who were injured by the Attack, for an extended period of time. The Immediate Family Member Plaintiffs are still deprived of the assistance, society, and companionship of the healthy, active, and productive young servicemembers, they knew and loved prior to the terrorist attack described above. This has caused them to suffer, among other things, extreme mental anguish, and emotional and physical pain and suffering.

192.    As a result, the Immediate Family Member Plaintiffs are entitled to damages for loss of solatium and loss of consortium, loss of services, and pain and suffering.

193.    For the reasons stated above, Defendants are jointly and severally liable to Immediate Family Member Plaintiffs in an amount to be determined herein.

## COUNT VI

## PUNITIVE DAMAGES
### By All Plaintiffs
### (Under 28 U.S.C. § 1605A(c))

194.    Plaintiffs repeat, re-allege, and incorporate by reference those facts and allegations set forth in all the foregoing paragraphs as if fully set forth herein.

195.    The actions of Defendants, acting in concert with their Agent Hezbollah, to carry out their unlawful objectives were malicious and willful, wanton and reckless in their disregard for human life and limb, and caused severe injuries to all the Injured Servicemember Plaintiffs and untold pain and suffering to the Immediate Family Member Plaintiffs.

196.    The actions of Hezbollah were undertaken at such time as they were operating for and in the service of Defendants Iran, MOIS, and the IRGC, and in concert with those Defendants, and therefore Defendants are both vicariously and directly liable to Plaintiffs.

197.    Defendants' conduct was criminal, outrageous, extreme, wanton, willful malicious, and constitutes a threat to the public warranting an award of punitive damages.

198.    For the reasons stated above, Defendants Iran, MOIS, and the IRGC are jointly and severally liable to Plaintiffs for punitive damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs request that the Court grant judgment in their favor and against Defendants, and grant Plaintiffs:

A.  Compensatory damages including, but not limited to, physical injury, extreme mental anguish, pain and suffering, emotional injury, loss of solatium, loss of consortium, and loss

of services, in favor of each of the Plaintiffs as against Defendants jointly and severally, in

amounts to be determined by the Court;

B.  Punitive Damages in favor of each of the Plaintiffs as against Defendants jointly and

severally in the amount determined by the Court;

C.  Pre-judgment and Post-judgment interest at the maximum rates allowable by law;

D.  Any other and equitable relief that the Court deems just and necessary.


Dated:    August 11, 2023                      Respectfully submitted,

/s/   Gavriel Mairone__
MM~LAW, LLC
Gavriel Mairone, Esq.
Bar No. 156461
Adora Sauer, Esq. (Pro Hac Vice to be filed)
Illinois Bar No. 6256703
980 North Michigan Avenue, Suite 1400
Chicago, IL 60611
Tel: (312) 253-7444
Fax: (312) 275-8590
ctlaw@mm-law.com;
adora@mm-law.com

*Counsel for Plaintiffs*